# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**JESSE RAYMOND RUTLEDGE,**

    Petitioner,

vs.

                                                **CASE NO. 4:07cv471-RH/WCS**

**WALTER A. McNEIL,**

    Respondent.

    _____/

## REPORT AND RECOMMENDATION

This is an amended petition for writ of habeas corpus filed by Jesse Raymond Rutledge pursuant to 28 U.S.C. §§ 2241 and 2254. Doc. 10 (documents as transferred from the Middle District of Florida, doc. 1). This petition concerns Petitioner's 1975 convictions for murder (two counts) and assault with intent to murder (two counts) in the Circuit Court of the Eighth Judicial Circuit, in and for Alachua County, Florida, case number 75-457, and challenges the execution of those sentences. Respondent filed a response, doc. 18, and the state record in paper form as an appendix to doc. 18, and Petitioner filed a reply. Doc. 20. Respondent concedes that Petitioner has exhausted his state court remedies. Doc. 15, p. 4.

**Procedural history**

Petitioner was originally sentenced to death on the two murder counts, and 15 years, consecutive, on the other two counts. Doc. 18, pp. 1-2. The sentencing court stated that if Petitioner's death sentences were ever commuted to life, all sentences were to be consecutive. *Id.*, p. 2. The trial court explained this at sentencing:

> It is the avowed intent of this Court that if the death penalty be held unconstitutional and the death sentences herein become life sentences, then all sentences herein imposed shall be consecutive. That is to say, in the event you shall be sentenced to life imprisonment for each of the murders committed by you, they shall run consecutively; and the two 15-year sentences shall run consecutive to each other and consecutive to each of the life sentences; in which event you would not be eligible for parole on the first life sentence until after you have served the full and complete term of 25 years whereupon the second life sentence would commence to run for another minimum period of 25 years whereupon the first 15-year sentence imposed would then commence to run and thereafter the second 15-year sentence would commence to run.

Ex. A, p. 107 (references are to the page number handwritten on the exhibit in the lower right hand corner of the page).

Petitioner brings a single claim to this court. He asserts that in 1983, the Executive Clemency Board of the State of Florida commuted his "death sentence" to a life sentence with a 25 year minimum mandatory term before he may be eligible for parole. Doc. 10, p. 11 when viewed as a consolidated document on the electronic docket (petition, page 6). He contends that the Florida Department of Corrections changed this to a minimum mandatory 50 year term before becoming eligible for parole, and he contends that the Department does not have such authority. *Id.* He also argues that the Department's actions violated due process and subjected him to "double jeopardy." *Id.*, pp. 27 and 31 (memorandum, pp. 6 and 10).

The record reflects that on April 19, 1983, by executive order, the Governor and Cabinet acted pursuant to FLA. STAT. § 775.082. The order states that:

> the death sentence as imposed upon said JESSE RAYMOND RUTLEDGE, be and the same is hereby commuted to life imprisonment in the State Prison in accordance with § 775.082, Florida Statutes, and JESSE RAYMOND RUTLEDGE shall be required to serve no less than twenty-five years before becoming eligible for parole.

Ex. A, p. 102. Respondent states that Petitioner's overall sentence is life in prison, and the Department of Corrections has "structured his sentences consecutively." Doc. 15, p. 2.

The Circuit Judge Terry Lewis rejected this claim. The court determined that the Department "has properly structured the Petitioner's sentences." Doc. 10, p. 44 (Order Denying Petition for Writ of Mandamus, case no. 2004-CA-686, p. 2). The court reasoned:

> Because the Clemency Order did not address how the life sentences would be served, reliance upon the court's alternative sentencing orders is necessary. That order clearly provides for consecutive sentences in the event that the death sentences are not carried out. That the court anticipated alternative sentences might be needed because of challenges to the constitutionality of the death penalty, rather than an act of clemency, is irrelevant to the alternative sentence imposed. The alternative sentences became operative when the Clemency Board commuted the death sentences.

*Id.*, p. 45 (p. 2 of the Order).

**Timeliness**

Respondent argues that the petition is untimely. Doc. 18, pp. 4-8. There is a one year limitations period for filing a § 2254 petition. 28 U.S.C. § 2244(d)(1). The period runs from the latest of these dates:

>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)-(D).

As the judgment was final before April 23, 1996, the effective date of the one year limitations period, Petitioner had until April 23, 1997, to file this petition unless a later commencement date is applicable.  Goodman v. United States, 151 F.3d 1335, 1337-38 (11th Cir. 1998) ( § 2255); Wilcox v. Florida Dept. of Corrections, 158 F.3d 1209, 1211 (11th Cir. 1998) (§ 2254); 28 U.S.C. S 2244(d).

The only other commencement date which could arguably apply is subsection (D).  The clemency order was issued on April 19, 1983.  Respondent does not allege when Petitioner should have discovered the restructuring of his sentence, but notes Petitioner makes no claim that he did *not* discover it until 1999, when his first grievance on the subject was filed.  Doc. 18, p. 7.  Petitioner makes no claim in his reply as to when he discovered that his sentence had been restructured.  Logically it would have been shortly after issuance of the clemency order, and as discussed ahead the Department elsewhere claimed that the sentences were restructured "upon receiving the order of commutation."

Within the exhibits there is a letter indicating Petitioner's awareness of his the structure of sentence no later than May 26, 1995.  The letter of that date was written by the Department's Deputy General Counsel to the Coordinator of the Office of Executive Clemency.  Ex. B, pp. 8-9 of composite exhibit (apparently an attachment to Petitioner's Petition for Clarification of Executive Order filed in the Florida Supreme Court).  The letter noted the 1983 commutation of sentence and said that, "[u]pon receiving the order of commutation, the department restructured the two death sentences to two life sentences, imposed consecutively, each with a 25-year mandatory prior to parole."  *Id.*, p. 8.[1]  The letter indicates that Stephen Johnson, counsel for Petitioner, "is of the opinion that, with regard to the life sentences, the Executive order controls rather than Judge Carlisle's sentencing order," and notes "some confusion over the correct interpretation of the order of commutation."  *Id.*  The letter seeks assistance in obtaining clarification.  It is unknown if clarification was ever provided.

Clearly, however, Petitioner knew no later than May of 1995 that his sentences had been structured as consecutive minimum mandatory terms of 25 years each after the 1983 order.  The one year period commenced on April 23, 1996, and expired one year later.  There is no showing of tolling activity during that period.

Petitioner asserts exceptions to the time requirement, specifically the "unreasonable determination" exception and "factual innocence" exception. Doc. 20,

---

[1] See also Ex. A, p. 129 (p. 2 of Department's response to state court mandamus petition) (using this "upon receiving" language).

pp. 3-4. The unreasonable determination language is inapplicable to timeliness.[2]

Petitioner claims he "is <u>factually innocent</u> of <u>two life sentences</u> according to <u>executive order</u> <u>#83-56</u>." *Id.*, p. 4. But assuming Petitioner could be actually innocent of life sentences,[3] and assuming that actual innocence *could* excuse the time limit,[4] there is no showing at all of actual innocence. Clemency or commutation of a sentence may have legal implications, but does not show factual innocence of an offense or sentence. *Cf.* <u>Bousley v. United States</u>, 523 U.S. 614, 623-624, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) ("'actual innocence' means factual innocence, not mere legal insufficiency.") (citation omitted). In light of the above, the petition is untimely.

**Federal question**

Even if the petition were not untimely, it would be denied as failing to set forth a federal claim. This petition presents only issues of state law, construing a state criminal sentence and a Clemency order. A violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution. <u>Engle v. Isaac</u>, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); <u>Wallace v. Turner</u>, 695 F.2d 545, 548 (11th Cir. 1983) (procedural rule); <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir.

---

[2] Section 2254(d) provides that habeas corpus will not be granted as to any claim adjudicated on the merits in state court proceedings, unless adjudication of the claim, *inter alia*, "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

[3] It is not clear whether the actual innocence exception applies at all to noncapital sentencings, and where it is applied courts have debated the types of noncapital sentences of which one can be "innocent." <u>Cristin v. Brennan</u>, 281 F.3d 404, 421-22 (3d Cir.), *cert. denied*, 537 U.S. 897 (2002) (collecting cases).

[4] The issue has not yet been decided in the Eleventh Circuit. *See, e.g.*, <u>Sibley v. Culliver</u>, 377 F.3d 1196, 1205 (11th Cir. 2004) (the factual issue of whether actual innocence is shown should be addressed before deciding whether it would warrant an exception to the time limit) (citation omitted).

Case No. 4:07cv471-RH/WCS

1989) (sentencing guidelines); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1054-1055 (11th Cir. 1987) (jury instruction).  Further, State Circuit Court Judge Lewis construed the sentencing order and the Clemency order as a matter of state law and ruled against Petitioner.  He did not consider any sort of federal claim as he did so.  "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.' "  <u>Herring v. Secretary, Dept. of Corrections</u>, 397 F.3d 1338, 1355 (11th Cir.), *cert. denied*, 546 U.S. 928 (2005), *quoting*, <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1554-1355 (11th Cir.1997) (citations omitted).

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Jesse Raymond Rutledge challenging the execution of his sentences for murder (two counts) and assault with intent to murder (two counts) in the Circuit Court of the Eighth Judicial Circuit, in and for Alachua County, Florida, case number 75-457, be **DENIED WITH PREJUDICE** as untimely and as raising only a state law claim.

**IN CHAMBERS** at Tallahassee, Florida, on March 4, 2009.


        s/    William C. Sherrill, Jr.
        **WILLIAM C. SHERRILL, JR.**
        **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**